[Civ. No. 6758. First Appellate District, Division One.—June 19, 1929.]

EUGENE McCARTHY, Executor, etc., Appellant, v. R. Mc-COLGAN et al., Respondents; WILLIAM N. McCARTHY et al., Interveners and Appellants.

J. F. Riley for Appellant.

E. J. Talbott and Glensor, Clewe & Van Dine for Interveners and Appellants.

Brobeck, Phleger & Harrison for Respondents.

THE COURT.—This action was commenced on February 4, 1924, by Eugene McCarthy as executor of the last will and testament of Harriet McCarthy, deceased, against Reginald McColgan for the enforcement of an alleged trust in certain real property in the city of San Francisco upon which is situated a hotel. Eugene McCarthy is a son of the deceased. Subsequently the other children of the latter, namely, William N. McCarthy and Elizabeth Renstrom, filed their complaint in intervention, and Adelaide McColgan, as administratrix with the will annexed of the estate of Daniel A. McColgan, deceased, was also brought in as a party defendant to the action.

Previous to April 2, 1915, the record title to the property stood in the name of Harriet McCarthy, deceased. On that date she conveyed the same to the Harriet McCarthy Investment Company, a California corporation, all the stock

of which she owned. In 1917 the property was subject to three encumbrances, namely, a mortgage to Hibernia Savings and Loan Society (hereinafter referred to as the bank), the amount of which, with other charges, aggregated approximately $100,000; a deed of trust, securing the payment of a note for $8,900 and interest, to M. J. Hines, who subsequently died, this sum being also secured by a chattel mortgage on the furniture in the hotel, and a similar deed, securing the payment to defendant Reginald McColgan and Daniel A. McColgan, who were copartners in the business of lending money, of the sum of $7,163.86 with interest. Mrs. McCarthy also owed on the purchase price of certain furniture in the hotel an amount which was subsequently determined to be $15,000, and in addition sums to other creditors the total amount of which the record does not disclose. During the year 1917 the partners above named purchased from his estate the Hines debt, taking an assignment for their benefit of the security, and at about the same time the bank commenced suit to foreclose its mortgage. Thereupon the partners caused their deed of trust to be foreclosed, the property upon the sale thereunder to be purchased for their benefit, and the record title thereto was subsequently, to wit, June 26, 1917, conveyed to Daniel A. McColgan. Thereafter a new mortgage upon the property was executed by the partners to the bank and the original mortgage satisfied. The partners subsequently paid the amount owing on the furniture and, in addition to other purchases of furniture, have made improvements upon the property at an expense, according to the testimony of defendant Reginald McColgan, of approximately $26,000. Harriet McCarthy, who devised her interest in the property to her children above named, died in 1920. Daniel A. McColgan died in 1921, his interest therein being devised to defendant Reginald McColgan. The executor averred that before the deeds of trust were foreclosed the partners promised Mrs. McCarthy that they would purchase the property upon the sale and arrange in effect for an extension of the mortgage; that they would thereafter hold the property in trust for her and her heirs, manage and conduct the hotel, applying the profit therefrom to the indebtedness, and reconvey the same to her or her heirs free of encumbrances at any time she or they might be able to repay

the sums owing thereon. The interveners also alleged that like promises were made to them at various times until August, 1922, when for the first time the trust was repudiated by defendant McColgan, and that the promises were made by the partners with the intention of not performing the same and for the purpose of fraudulently procuring the interest of Mrs. McCarthy in the property. Relying thereon the deceased and interveners did not attempt to procure other loans upon the property but permitted the partners to cause the same to be sold and conveyed to Daniel A. McColgan, and by reason of the promises permitted the latter and defendant Reginald McColgan to hold the same in trust and to remain in possession thereof.

Answers denying these averments were filed by Reginald McColgan and Adelaide McColgan, as administratrix.

The court found against the allegations of the complaints, and in addition made the following finding, which was in accordance with the allegations of the answers filed by defendants: "Daniel A. McColgan, mentioned in the pleadings herein, was a material and necessary witness with respect to the truth of the allegations contained in the complaint and in the complaint in intervention. Said Daniel A. McColgan died on May 12, 1921. Neither the plaintiff nor the interveners, nor either of them, ever asserted the claims set forth in the complaint or the claims set forth in the complaint in intervention until after the death of said Daniel A. McColgan and until after it became impossible to secure the testimony of said Daniel A. McColgan with respect to such claims by reason of his said death. Since June 26, 1917, and prior to the assertion by the plaintiff or the interveners, or either of them, of the claims set forth in the complaint and the complaint in intervention the defendant Reginald McColgan expended large sums of money in the improvement of the real property described in the complaint and during said time the said real property has greatly increased in value. The plaintiff and the interveners have allowed the defendant Reginald McColgan to make such expenditures and have allowed such increase in value to occur without asserting any such claim, and have delayed for an unreasonable time the assertion of such claim and have abandoned the same, and the defendant Reginald McColgan would be prejudiced by the enforcement of such

claim at the present time after such long-continued delay, and the court further finds that the cause of action set forth in the complaint and in the complaint in intervention is barred by the laches of the plaintiff and of the interveners.''

The decree entered thereon adjudged Reginald McColgan to be the owner of the property in fee simple, and that neither Mrs. McCarthy at the time of her death nor her children had or have any right, title or interest therein.

As grounds for the appeal it is contended that the findings are unsupported and that the court erroneously struck out appellants' complaint in intervention and refused to admit in evidence a deed alleged therein to be a forgery.

The executor gave no testimony in support of the matters alleged in the complaints other than his willingness to repay any sums found to be owing to the defendants. The interveners, however, testified to promises made by the partners before the sale that the title should be held and the property managed as alleged, and also to admissions made on subsequent occasions that such was the agreement; further, that C. E. Blanchard, a contractor, had previous to the sale offered Mrs. McCarthy $20,000 for the property subject to the encumbrances which, with the claims of the unsecured creditors, he agreed to pay and allow her one year to redeem by paying the sums advanced with interest at ten per cent; that persuaded by the partners and relying upon their promises as stated above, she rejected the offer. Blanchard corroborated the interveners as to the offer claimed to have been made by him. Their testimony regarding admissions by the partners that they held the property in trust for Mrs. McCarthy and her children was corroborated by other witnesses, who testified to like admissions to them or in their presence. A qualified witness also testified that in his opinion the value of the property at the time of the sale was approximately $238,000. Defendant Reginald McColgan denied the promises and admissions claimed, and also that Mrs. McCarthy had been induced to decline an offer for the property from Blanchard. Evidence was adduced that in 1923 William N. McCarthy admitted that of his own knowledge he knew of no statement having been made by either of the partners that they would under any circumstances reconvey the property to Mrs. McCarthy, and also that he had testified in another action that the partners

were the owners of the property, which they were obliged to take over in 1917 to protect their loans. It was also testified by a witness claiming to be familiar with real estate values in San Francisco that there was a marked depression in such values in 1917, and that in his opinion the property was then worth about $125,000.

Appellants insist that in view of the circumstances and the testimony adduced by them at the trial as above, defendant's evidence afforded no reasonable ground for the conclusions of the trial court, and that findings in accordance with the allegations of the complaints should be made in this court.

The only witnesses who testified to the promises alleged were William McCarthy and Elizabeth Renstrom, the interveners. Six witnesses were called, however, by the plaintiffs to testify to admissions by the partners. Four of these testified that at a meeting of the creditors of Mrs. McCarthy, held before the sale of the purchase of the Hines note, defendant Reginald McColgan stated that the partners intended to protect Mrs. McCarthy and the Hines heirs against the other creditors, and on this occasion accused one of the witnesses, an attorney representing the Hines estate, of attempting to deprive Mrs. McCarthy of the property. One of the witnesses last mentioned, with a fifth, also testified to subsequent admissions by the partners that they were holding the property for Mrs. McCarthy and her children. The sixth witness, a carpenter, testified that one of the partners made the same statement to him while he was employed at the hotel. Two of the above witnesses admitted that they had previously had litigation with the partners over other property interests. Another was the husband of Mrs. Renstrom, and the relations of the attorney with the partners had manifestly been unfriendly. The two among the number who could fairly be said to have been unbiased were one of the heirs of Hines, whose testimony was confined to what occurred at the creditors' meeting, and the carpenter mentioned. As to the latter, however, the circumstances under which it was claimed the admission was made might reasonably have created a doubt in the mind of the court as to the credibility of the testimony in that respect. Nor does it appear certain, as claimed by appellants, that Blanchard was an unbiased or disinterested wit-

ness as, according to appellants' testimony, the partners in another transaction sought unsuccessfully to overreach Blanchard, but the latter was warned of the design by interveners.

The credibility of the witnesses was a question for the determination of the trial court (Code Civ. Proc., sec. 1847; *Badover* v. *Guaranty Trust & Sav. Bank*, 186 Cal. 775 [200 Pac. 638]; *Crow* v. *Crow*, 168 Cal. 607 [143 Pac. 689]; *Dracovich* v. *Dracovich*, 53 Cal. App. 361 [200 Pac. 44]); and though it should appear to this court that other conclusions might fairly and reasonably have been drawn from the evidence, yet, where, as here, a substantial conflict exists, and the conclusions of the trial court find reasonable support, the rule is settled that its findings cannot be disturbed on appeal (*Waer* v. *Waer*, 189 Cal. 178 [207 Pac. 891]; *Webster* v. *Lowe*, 177 Cal. 385 [170 Pac. 850]; *Levi* v. *Chesley*, 178 Cal. 145 [172 Pac. 607]; *Stransky* v. *Callan*, 81 Cal. App. 476 [253 Pac. 960]).

The complaint in intervention, in addition to the matters stated above, alleged that Daniel A. and Reginald McColgan were copartners, and that upon the death of his brother Reginald, the surviving partner, caused the name of the former as grantor to be forged to a deed purporting to convey the property to him as grantee, and that the same was recorded. This deed the interveners sought to have declared void. The allegations respecting the deed were stricken out on motion, and of this appellants complain.

The order was not erroneous, it being immaterial in view of the other facts alleged as to which partner held the legal title, nor was it essential to the relief sought that the validity of the deed be determined. The claim of defendant McColgan to his brother's interest in the property rested upon the devise from the latter, and his title to that interest had its inception at the time of the brother's death (*Western Pac. Ry. Co.* v. *Godfrey*, 166 Cal. 346 [Ann. Cas. 1915B, 825, 236 Pac. 284]). He stated, however, on cross-examination that he caused the above deed to be filed for record, following which the record was offered in evidence by appellants, but upon objection to its materiality it was excluded. The purpose of the offer, as stated by appellants, was to impeach McColgan by showing that the deed was forged.

The fact, if true, was not a fraud upon appellants, nor was it relevant to that or any other issue in the case, the only persons affected thereby being those interested in the estate of Daniel A. McColgan. It is nevertheless urged that the fact if proved would affect the credibility of the surviving partner, and appellants in support of their contention rely upon the case of *Masters* v. *Seeley*, 138 Fed. 719. This was an action upon an account, in which the defendant sought to show upon the cross-examination of the plaintiff that a previous action on the claim had been filed, a judgment by default obtained, and that this judgment had been set aside on the grounds of fraud and collusion. It was held that the fact was relevant on the question of the good faith of the plaintiff, and also as tending to show that he had dealt unfairly with the defendant in regard to the subject matter of the controversy. In the present case, however, the act, although a wrong upon those interested in the estate of the deceased McColgan, was not so as to appellants, nor did it tend to show that the defendant had on previous occasions dealt unfairly with them. Moreover, the rule is well settled that character cannot be attacked by evidence of particular wrongful acts, nor may questions with reference to such matters be properly asked (*Sharon* v. *Sharon*, 79 Cal. 633 [22 Pac. 26, 131] ; *Evans* v. *De Lay*, 81 Cal. 103 [22 Pac. 408] ; *Barkly* v. *Copeland*, 86 Cal. 483 [25 Pac. 405] ; *Jones* v. *Duchow*, 87 Cal. 109 [23 Pac. 371, 25 Pac. 256] ; *Estate of James*, 124 Cal. 653 [57 Pac. 578, 1008] ; *People* v. *Crandall*, 125 Cal. 129 [57 Pac. 785]).

The question of laches—the finding on which defense we have quoted—is one of fact (*Wolff* v. *Canadian Pac. Ry. Co.*, 123 Cal. 535 [56 Pac. 453]), which is to be determined by a consideration of the circumstances of each particular case (10 Cal. Jur., Equity, sec. 64, p. 526). While mere delay in the absence of prejudice to the opposite party does not constitute laches (*Newport* v. *Hatton*, 195 Cal. 132 [231 Pac. 987] ; *Victor Oil Co.* v. *Drum*, 184 Cal. 226 [193 Pac. 243]), that no claim was made until after the death of a party to a transaction whose testimony would explain it has been held to be a factor material to the determination of the question (*Bell* v. *Hudson*, 73 Cal. 285 [2 Am. St. Rep. 791, 14 Pac. 791] ; *Burke* v. *Maguire*, 154 Cal. 456 [98 Pac. 21]). So, also, a marked appreciation in the value of the

property or outlays in making improvements thereon are elements to be considered (*Chapman* v. *State Bank,* 97 Cal. 155 (31 Pac. 896] ; *Stevenson* v. *Boyd,* 153 Cal. 630 [19 L. R. A. (N. S.) 525, 96 Pac. 284] ; *Akley* v. *Bassett,* 68 Cal. App. 270 [228 Pac. 1057] ). ▮ The record contains testimony sustaining the finding quoted, and its weight was a question for the trial court (Code Civ. Proc., sec. 2061), as was also the determination whether the circumstances shown were such as to bar by laches the claims of plaintiffs; and its findings being reasonably supported by the evidence cannot be interfered with on appeal (*Wolff* v. *Canadian Pac. Ry. Co., supra; Suhr* v. *Lauterbach,* 164 Cal. 591 [130 Pac. 2]).

It is our conclusion that the findings of the trial court against the allegations of the complaints as well as upon the special defenses last mentioned were fairly sustained by the evidence, and that no error has been shown which would justify a reversal of the judgment.

▮ We find no merit in defendants' contention that by reason of the conveyance by Mrs. McCarthy of her interest in the property to the Harriet McCarthy Investment Company the present action could not be maintained by her executor or heirs.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 19, 1929, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 15, 1929.

All the Justices present concurred.